IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 05-411 T
(Judge Allegra)

PRESIDIO ADVISORS, LLC, NORVEST LTD., ,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

DEFENDANT'S STATUS REPORT

Pursuant to the Order of this Court, the defendant files this status report to inform the Court of the basis for continuing the stay in this case pending the criminal proceeding in the United States District Court for the Southern District of New York in *United States v. Stein*, S1 05 Cr. 888 (LAK). On November 13, 2006, the *Stein* court, after a motion to continue the trial date filed by the defendants in that case, continued the criminal trial then set for January 16, 2007, and scheduled a conference for December 20, 2006, to discuss potential new trial dates. At that conference, the Stein court set September 17, 2007, as the trial date.

The Court has requested that the Government set forth the reasons for continued suspension of this case. As set forth below, John Larson and Robert Pfaff are named indictees in the *Stein* case. Their design, promotion and utilization of illegal tax shelters constitute some of

the overt acts set forth in the indictment. Further, both Larson and Pfaff have been charged with tax evasion as to their own tax liabilities as part of the Superseding Indictment. Although the illegal tax shelter at issue in this case is not among the transactions specifically at issue in the *Stein* case, Larson and Pfaff did use the transaction to shelter fees obtained from their activities detailed in the Superseding Indictment. Thus this case and the criminal case are intertwined and, for the reasons set forth in the Government's Motion to Suspend, and the additional reasons set forth below, the stay of this case should be continued.

**INTRODUCTION**

The two individuals behind Presidio Advisors, LLC, are John Larson and Robert Pfaff. Presidio Advisors was an entity utilized by Larson and Pfaff for their own personal tax schemes, and is also one of the Larson and Pfaff entities described in the Superseding Indictment. The United States Attorney for the Southern District of New York is prosecuting a criminal tax shelter conspiracy case in which Larson and Pfaff, among others, are named indictees.

Plaintiff filed this action on March 29, 2005, seeking a redetermination of adjustments that the Internal Revenue Service proposed to the partnership income tax return (Form 1065) that Presidio Advisors, LLC (Presidio), filed for its taxable year ended December 31, 1998.[1] Presidio asks the Court to overturn the IRS's determinations in the Notice of Final Partnership Administrative Adjustment (FPAA).[2] In the FPAA, the IRS disallowed a loss of $10,644,471

---

[1]Presidio reported that it had four partners in 1998: John Larson, 4104 24th Street, #570, San Francisco, California; Robert Pfaff, 93 Glenmoor Drive, Englewood, Colorado; Norvest Ltd. & Subsidiaries, fka Norwood Holdings, Inc., P.O. Box 265 GT, Grand Cayman, Cayman Islands; and Prevad, Inc., 11451 Katy Freeway, Ste. 510, Houston, Texas. *Compl. Ex. B.*

[2] *Compl. Ex. A.*

claimed by Presidio with respect to the purported sale of equipment with an artificially inflated basis of $11,881,813. The IRS determined that the transactions giving rise to the claimed loss lacked economic substance, had no bona fide business purpose, and were shams. Presidio's "paper" loss, generated through the purported sale of the equipment with an artificially pumped-up basis, allowed the principals of Presidio, including John Larson and Robert Pfaff, to avoid paying income taxes on substantial amounts of income, presumably including income they received through the promotion and implementation of illegal tax shelters in 1998.

**The Superseding Indictment.**

The criminal indictment handed down against Larson and Pfaff, among others, alleges they participated in a broad-based conspiracy to develop, promote, sell, and implement various illegal tax shelters with the worldwide accounting firm KPMG, LLP and others.[3] On August 29, 2005, KPMG admitted and accepted responsibility for violations of law with respect to its involvement in developing, promoting, selling, and implementing illegal tax shelters during the period from 1996 through 2002 and has agreed to pay $456,000,000 to the United States as a punitive fine, restitution, and penalties to the IRS stemming from its involvement with the illegal tax shelters.[4] Among the fraudulent tax shelter transactions designed, marketed, sold, and implemented by KPMG and others were FLIP (Foreign Leveraged Investment Program), OPIS

---

[3] *See "The Role of Professional Firms in the U.S. Tax Shelter Industry," Permanent Subcommittee on Investigations of the Committee on Homeland Security and Governmental Affairs*, at 11, Senate Report 109-54, 109th Cong., 1st Session (2005) ("Subcommittee Report").

[4] *See KPMG Deferred Prosecution Agreement* attached to the Defendant's Motion to Suspend as Ex. 1 to the Declaration of David House; *KPMG Information* attached to the Defendant's Motion to Suspend as Ex. 2 to the Declaration of David House; *KPMG Statement of Facts* , attached to the Defendant's Motion to Suspend as Ex. 3 to the Declaration of David House.

(Offshore Portfolio Investment Strategy), BLIPS (Bond Linked Issue Premium Structure), and SOS (Short Option Strategy) shelters.[5]

Larson and Pfaff, and their entities, were involved closely in the development, promotion, sale, and implementation of the fraudulent tax shelters with KPMG.[6] In 1997, one of the Larson/Pfaff entities, Presidio Advisory Services, and KPMG first entered into a formal operating agreement with respect to the marketing, sale, and implementation of the FLIP tax shelter.[7] The agreement was modified in 1998 to expand Presidio's involvement to the OPIS and BLIPS tax shelters.[8] During the illegal tax shelter conspiracy, the Larson/Pfaff entities received at least $140 million in fees (approximately 95% of their revenue) from their illegal tax-shelter related work with KPMG.[9] The Superseding Indictment alleges that both Larson and Pfaff were among the individuals who used illegal tax shelters to evade their own taxes,[10] and also charges Larson and Pfaff with tax evasion with respect to their own tax liabilities through the use of tax shelters.[11] It appears from the Indictment that these evasion charges relate to BLIPS shelters in 1999 and 2000.

---

[5] *KPMG Information, supra, ¶ 11.*

[6] *Subcommittee Report, at 122-125.*

[7] *Id. at 122.*

[8] *Id. at 123.*

[9] *Id.* at 122; *Superseding Indictment*, *United States v. Stein, et al.*, 05 Crim. 888 (LAK) (SDNY) ¶ 68, attached to the Defendant's Motion to Suspend as Ex. 4 to the Declaration of David House (hereinafter "Superseding Indictment).

[10] *Superseding Indictment*, para. 33.

[11] *Superseding Indictment*, para. 80.

Although the transaction at issue in this case is not one that is specifically at issue in the criminal case, it is one in which Larson and Pfaff used to hide their income from the illegal tax-shelter related work. The Government expects to establish that a Larson/Pfaff entity used in furtherance of the transaction in the civil case was also utilized in furtherance of transactions that are at issue in the criminal case.

**<u>Rule 404(b) Notice filed in *Stein*.</u>**

Pursuant to Rule 404(b) of the Federal Rules of Evidence, on October 2, 2006, the United States Attorneys Office for the Southern District of New York, notified the criminal defendants that it intends to prove at trial crimes in addition to the charges filed in the Superseding Indictment in *Stein*.[12] Defendants Larson and Pfaff are among those against whom additional crimes will be proven at trial. Specifically, the Rule 404 Notice states:

> 3. Between 1993 and 1998, Pfaff, John Larson, and others participated in a series of fraudulent tax shelter transactions where he caused entities he secretly controlled – including one named "Skandia" – to be inserted into tax shelter transactions based on the non-resident alien status of the purported owners. (The purported owner of Skandia, for instance, was a Norwegian citizen whom Pfaff had known for decades.) In truth and in fact, Pfaff was a secret owner of many of the entities (including Skandia) who: structured the deals in which Skandia and the other entities were involved; controlled the activities of the purported owners of the entities, including Skandia; shared, with Larson and others, in the profits derived from the involvement of Skandia and the other entities in tax shelter activities, including those while Pfaff was a partner at KPMG and Larson a senior manager; and conspired to make secret payments to a New York banker whose bank was enlisted to participated in the Skandia-related transactions.

[12]The complete Rule 404(b) notice is attached hereto as Exhibit A. That Notice also provides, at page one, that much of the conduct set forth in that Notice "constitutes proof of the crimes charged in the Indictment and is thus admissible without regard to Rule 404(b)."

> The foregoing acts by Pfaff and Larson are admissible principally, but not exclusively to show knowledge, intent and the relationship of trust between co-conspirators.

The Government expects to establish in this case that Norvest Ltd, the named tax matters partner, was at one time named Skandia America Inc., which was allegedly owned by two Norwegian nationals. Through a series of transactions, Skandia became Norvest Ltd, in which Larson and Pfaff both held an interest, and which was controlled by Larson and Pfaff in order to facilitate the illegal tax shelter at issue in this case, as well as certain illegal tax shelters at issue in the criminal case.

**Common Issues of Fact and Law**

As set forth above, the focus of the criminal proceeding is on the wholesale promotion of what are essentially pre-planned short-term tax shelter transactions as well as the efforts of the criminal defendants to disguise the true nature of the transactions from the Service as well as Congress. In fact, the Superseding Indictment in *Stein* recites one instance wherein John Larson presented false and misleading testimony to Congress regarding the tax shelters.[13] The Superseding Indictment also charges both Larson and Pfaff with tax evasion with respect to their own tax liabilities to avoid income taxes on fees obtained through their promotion and development of illegal tax shelters.[14]

The Superseding Indictment and the Rule 404(b) Notice set forth the government's position regarding Pfaff and Larson's use of Skandia and their participation in the illegal tax shelter scheme. There are several issues regarding the nature of the the illegal tax shelter

---

[13]*Superseding Indictment*, para. 63.

[14]*Superseding Indictment*, para. 33.

transactions which are common to both proceedings.

Obviously the burden of proof and elements of a criminal case are different from the standards in a civil tax case. However there are overlapping and similar issues of fact and to some extent law that are common to both including:

> 1. Whether the shelter transactions designed, promoted and implemented by Larson and Pfaff and charged in *Stein* were a sham and lacked economic substance; and whether the transaction engaged in by Larson and Pfaff through Presidio Advisors, LLC was a sham and lacked economic substance.
>
> 2. Whether transactions at issue in *Stein* and this case were engaged in with a profit motive.
>
> 3. Whether Larson and Pfaff controlled and used an entity allegedly owned by a foreign national as part of the illegal shelter transactions charged in *Stein* and did the same in this case.
>
> 4. Whether Larson and Pfaff acted with criminal intent in *Stein* with respect to the shelter transactions at issue in that case, and whether as Presidio partners they had reasonable cause or acted in good faith in implementing the shelter transaction.

Further, as stated above, the Government expects to establish in the civil case that the illegal shelter involved Skandia (reconstituted as Norvest), which was owned by two Norwegian citizens who had been known for some time by Pfaff. The Rule 404(b) Notice details the involvement Skandia in Pfaff and Larson's illegal shelter schemes.

**<u>Common Witnesses</u>**

While the prosecution is not permitted to call the criminal defendants as witnesses, it is clear the Government in Presidio may wish to call several of the named indictees as witnesses in this case. Among those the Government may call are: Robert Pfaff, John Larson, Raymond Ruble, Jeffrey Stein, Jeffrey Eischeid, and John Lanning.

Stein, Eischeid, and Lanning are described in the Superseding Indictment (para. 78(b)

and (c)) as participating with Larson and Pfaff in committing overt acts in furtherance of the criminal conspiracy. For purposes of the civil case, those individuals may have knowledge regarding the nature and purpose of the shelter transactions as structured by Larson and Pfaff and as to the transaction which is part of this case. Raymond Ruble is described as having assisted in preparing false tax opinion letters regarding tax shelters promoted by Larson and Pfaff and may have knowledge regarding the true nature of the transactions structured by Larson and Pfaff in general as well as the transaction which is part of this case.

The difficulty is that Larson, Pfaff, and the other indictees will most likely exercise their Fifth Amendment right against self incrimination when the Government seeks to take depositions in discovery. In fact, Raymond Ruble, Jeffrey Stein, and Jeffrey Eischeid have already exercised their Fifth Amendment rights and declined to testify at depositions taken by Government counsel in a Tax Court case involving a shelter transaction.[15] John Larson has also exercised his Fifth Amendment right and declined to testify at depositions taken by Government counsel with respect to a tax shelter designed, promoted and facilitated by a Presidio entity.[16] Accordingly, the government's ability to conduct discovery is already compromised in this matter while the criminal trial is pending.

In addition to the named indictees, the Government anticipates that its potential witnesses would include Claire M. O'Neal, CPA, who prepared tax returns for various Larson and Pfaff entities. The Government has identified Claire M. O'Neal as an expected witness at the *Stein*

[15]That case is *Tucker v. Commissioner*, Docket No. 12307-04 (United States Tax Court). The Government will provide the Court with the transcripts, if the Court so requests.

[16]That case is *Klamath v. United States*, Docket No. 5:04:CV278 (E.D. Tex.). The Government will provide the Court with the transcripts, if the Court so requests.

trial. A second person, Kerry Bratton was employed by a Larson and Pfaff entity and is believed to have first hand knowledge of facts with respect to the transaction at issue in the civil case. Ms. Bratton has also been identified by the Government as an expected witness at the *Stein* trial.

**Motion to Adjourn Trial filed by Defendants in *Stein***.

The trial set for January 16, 2007 was adjourned after the defendants in *Stein* filed a Motion to Adjourn that trial.[17] A status conference is scheduled for December 20, 2006, at which the *Stein* Court will discuss potential dates for trial. As part of the rationale for adjourning the trial date set for January 16, 2007, the criminal defendants set forth that the overwhelming amount of documents turned over by the Government in that case as well as the extensive witness list provided no time for defense counsel to adequately review those documents and witness statements and prepare for the January trial.

Further stay of the civil case would enable Pfaff, Larson, and the other potential named indictees who may be called as witnesses in this case to focus on defense of the criminal trial rather than being forced to face the Government on two fronts. What is clear, assuming the criminal defendants' Motion to Adjourn filed in *Stein* is accurate, is that Larson and Pfaff will have little or no time prior to the criminal trial to devote any time to the civil case. Thus continued suspension of the civil case will not work a hardship on them.

[17]The Government had previously filed a request for adjournment, but that had not been acted upon by the *Stein* Court prior to the defendants' motion.

**Standards for Stay**

As presented in the Government's Motion to Suspend, the Claims Court enumerated three tests that a movant seeking a stay of a civil trial on the basis of a concurrent criminal trial must satisfy:

> (1) the movant must make a clear showing, by direct or indirect proof, that the issues in the civil action are "related" as well as "substantially similar" to the issues in the criminal investigation;
>
> (2) the movant must make a clear showing of hardship or inequity if required to go forward with the civil case while the criminal investigation is pending; and
>
> (3) the movant must establish that the duration of the requested stay is not immoderate or unreasonable.

*St. Paul Fire & Marine Ins. Co. v. United States*, 24 Cl. Ct. 513, 515 (1991). This three-part test was used most recently by the court in *Ampetrol v. United States*, 30 Fed. Cl. 320, 321 (1994) , which granted a stay despite the fact that Ampetrol was not a defendant in the criminal proceedings.

The Government has shown above that this case and *Stein* are both related and substantially similar – the first prong of the *St. Paul Fire* test. The Superseding Indictment alleges that both Larson and Pfaff were among the individuals who used shelters to evade their own taxes. Both Larson and Pfaff have been charged with tax evasion for fraudulently sheltering the fee income they received from their promotion of illegal tax shelters. The transaction at issue in this case is an illegal tax shelter used to hide the income obtained by Larson and Pfaff from their design and promotion of illegal tax shelters. As part of that transaction, Larson and Pfaff utilized an entity allegedly owned by a foreign national. The criminal case charges that Larson and Pfaff utilized foreign entities to carry out fraudulent tax shelter transactions which

entities they actually owned and controlled through puppets and nominees. Moreover in *Stein* the Government proposes to use evidence as detailed in the Rule 404(b) Notice to establish tax crimes commited by Larson and Pfaff through the use of similar entities and individuals controlled by them through nominees.

In this case, the Government expects to establish that Larson and Pfaff conducted a series of preplanned steps to artificially increase basis in equipment. The equipment was purportedly purchased by a Larson and Pfaff entity for $2,009,068. The basis in the equipment was then fraudulently increased through a series of transactions to approximately $11,881,813. After the basis had been artificially increased, the equipment was purportedly sold which generated the alleged tax loss at issue. The Government expects to establish that the purchaser of the equipment was in fact an entity owned and controlled by Larson and Pfaff through a nominee. This transaction tracks the nature of the transactions at issue in *Stein*. Fraudulent losses were manufactured through a series of preplanned transactions, some utilizing Larson and Pfaff entities, which created artificially increased basis which was then used to generate fraudulent losses to offset income.[18]

Several of the indicted defendants will have their depositions taken in this case and may be called as witnesses. At least two of the witnesses being called in the criminal case will also be called in this case. Thus, this case and *Stein* are both related and substantially similar.

The second prong of *St. Paul Fire* is that of hardship or inequity on the moving party. In this instance, it has already been established that John Larson, and other named indictees, at

[18]*See*, *e.g.*, Notice 2000-44, 2000-2 C.B. 255, which describes the Son of BOSS SOS shelter and the methods utilized to artificially increase basis to create a fraudulent tax loss.

least, will be exercising their Fifth Amendment right against self-incrimination in depositions and at trial when questioned about shelter transactions. As a result, the Government will be prevented from obtaining the full discovery envisioned by the Rules of the Court of Federal Claims. On the other hand, plaintiff's partners in the civil case would have the benefit of full depositions of the Government's witnesses in *Prestop* – at least two of whom will be testifying in the criminal case.

Further, the early disclosure requirements will divert at least part of the criminal prosecution team from preparation of the criminal case to a review of the Government's documentary evidence in that case in an effort to determine what may and what may not be revealed to the Government's civil trial counsel under the rules of grand jury secrecy as well as what the Government is willing to reveal to civil counsel. If this case goes forward before *Stein*, the Government will be faced with a choice of whether to protect the criminal case at the expense of the civil case and not give civil counsel material that may be helpful because premature disclosure could negatively impact *Stein*, or assist with *Prestop*–because failure to do so could have a negative impact of a different sort on *Stein*. If the decision is made not to seek an order pursuant to Rule 6e of the Federal Rules of Criminal Procedure disclosing grand jury materials or to otherwise assist the civil case and the civil trial goes forward, the ability of the United States to defend itself in the civil trial may be severely compromised.

Given the common issues between this case and *Stein*, the fact that the transaction is of the type described in the Superseding Indictment and Rule 404(b) Notice, as well as the charge of tax evasion made against Larson and Pfaff, these concerns are not merely theoretical possibilities. If *Stein* goes forward first, the overlapping and relevant evidence will be available

to both the Government and the Petitioners in *Prestop*. Indeed, there is a possibility that the *Stein* trial would narrow the issues in *Prestop* or even result in a complete settlement.

The requested stay is not a one-sided benefit in favor of the Government. In making the decision to stay a civil case, courts must weigh the competing interests of the parties and must maintain an even balance. *Landis v. North American Co.*, 299 U.S. 248, 254 (1936) (citations omitted); *Ampetrol v. United States*, 30 Fed. Cl. 320, 321 (1994) (quoting *Landis*). If this case moves forward the Larson and Pfaff may be placed in the position of being forced to choose between invoking their Fifth Amendment right against self incrimination and prosecuting the civil case. The plaintiff has the burden of proof in this case. If the plaintiff does not respond to the Government's discovery questions, either on interrogatories or through deposition testimony, because of Larson and Pfaff exercising their Fifth Amendment rights, the potential lies that it would be unable to survive a motion to dismiss for failure to prosecute or meet their burden of proof at a trial on the merits. Accordingly, a stay pending resolution of the criminal trial serves to benefit plaintiff as well as the Government.

The third prong of the *St. Paul Fire* test is that the requested suspension is not immoderate or unreasonable. In this case, the Government has asked for a stay pending resolution of the criminal trial, due to the evidentiary concerns presented by Larson's and Pfaff's probable invocation of the Fifth Amendment right against self incrimination, the grand jury secrecy rules, as well as the use of civil discovery by Larson and Pfaff as a "dress rehearsal" for their criminal trial. The latest adjournment of the criminal trial was ordered after the criminal defendants (including Larson and Pfaff) filed a motion to adjourn due, at least in part, to their

inability to complete trial preparation by the January 2007 trial date.[19] A new trial date of September 17, 2007 has been set. Because this latest delay in the criminal trial is based, at least in part, on Larson's and Pfaff's need for time to prepare for their criminal trial, it is neither immoderate nor unreasonable to stay the civil case where the delay in the criminal trial is for the benefit of Larson and Pfaff – the real parties in interest in this case. This is particularly true where a lifting of the stay of the civil case would work a hardship on the Government.

For the above reasons, and those stated in its Motion to Suspend, defendant believes that the suspension of all proceedings in this case continues to be appropriate until resolution of the criminal trial.

Respectfully submitted,

s/ David R. House
DAVID R. HOUSE
Attorney of Record
U.S. Department of Justice
Tax Division
Court of Federal Claims Section
Post Office Box 26
Ben Franklin Post Office
Washington, D.C. 20044
(202) 616-3366

[19]While the Government had also filed an earlier motion to adjourn the trial date, the *Stein* Court had not acted on that motion when the criminal defendants filed their motion.

EILEEN J. O'CONNOR
Assistant Attorney General
DAVID GUSTAFSON
Chief, Court of Federal Claims Section
Of Counsel

s/David Gustafson
Attorneys for Defendant