# In The United States Court of Federal Claims

No. 05-411T

Filed: October 6, 2011

| | |
|---|---|
| PRESIDIO ADVISORS, LLC, <br> NORVEST LTD., <br><br> Petitioners, <br><br> v. <br><br> THE UNITED STATES, <br><br> Respondent. | * Partnership tax proceeding; Motion for <br> * partial summary judgment; Subchapter S <br> * corporation; Qualified Subchapter S <br> * subsidiary – 26 U.S.C. § 1361(b)(3)(B); <br> * Election to treat subsidiary as a QSub; IRS <br> * Notice 97-4; Admission – RCFC 36(b); <br> * Admission that S corporation did not own <br> * stock of subsidiary on date of election <br> * prevented subsidiary from being treated as <br> * QSub; Loss deduction based on carry-over <br> * basis disallowed; Partial summary <br> * judgment granted. |

**OPINION**

*Theodore H. Merriam*, Denver, CO, for petitioners.

*Karen E. Servidea*, Tax Division, United States Department of Justice, Washington, D.C., with whom was Acting Assistant Attorney General *John A. DiCicco*, for respondent.

**ALLEGRA, Judge:**

In this action, petitioners, Presidio Advisors, LLC (Presidio) and Norvest Limited, challenge the IRS' disallowance of $11.4 million in losses claimed by Presidio on its 1998 federal tax return and the assessment of accuracy-related penalties based on the resulting underpayment of tax. Respondent has filed a motion for partial summary judgment on the issue whether Presidio is entitled to a carry-over basis in equipment it acquired from another entity, the sale of which equipment was used to justify the challenged $11.4 million loss. Resolution of this issue requires the court to consider the provisions of Subchapter S of the Internal Revenue Code, as amended in 1996. Based on its review of those provisions, and for the reasons stated, the court **GRANTS** respondent's motion for partial summary judgment.

**I.      BACKGROUND**

A brief recitation of the underlying facts sets the context for this decision.

At various times during 1998, Presidio was a partnership comprised of John Larson; Robert Pfaff; Norwood Holdings, Inc., a subchapter C corporation; and Prevad, Inc. (Prevad), a subchapter S corporation. At the beginning of 1998, Larson and Pfaff each held a fifty percent interest in Prevad through their grantor trusts, the JL Investment Trust and the RP Investment Trust, respectively. Sometime during 1998, Norwood Holdings, Inc. purchased a thirty percent interest and, at approximately the same time, Larson and Pfaff transferred their partnership interests to Prevad.

On May 15, 1998, John Larson, Robert Pfaff, and Helminvest Resources, Inc. (Helminvest), a foreign tax-exempt corporation, formed the Presidio Capital Corporation (PCC). On June 26, 1998, Helminvest contributed to PCC an option to buy certain telecommunications equipment subject to a $1.5 million nonrecourse debt, as well as approximately $100,000 of Norwegian currency. In exchange, PCC assumed the obligation to close a $12 million short sale in U.S. Treasury securities and provided Helminvest with 900 shares of its stock. As a result of this transaction, Helminvest realized a gain of $11.7 million.[1] On June 26, 1998, when PCC acquired the option to purchase the telecommunications equipment, the equipment's fair market value was less than $11.8 million.

On October 27, 1998, PCC redeemed all shares from Helminvest, causing John Larson and Robert Pfaff – through their respective grantor trusts – to become the sole shareholders of PCC. On October 30, 1998, PCC exercised its option to purchase the equipment and paid $250,000, subject to the $1.5 million nonrecourse obligation. Presidio set PCC's basis in the equipment as equal to PCC's basis in the option when it was exercised ($10.2 million), plus the cash paid to exercise the option ($250,000), plus the amount of nonrecourse debt assumed by PCC ($1.5 million), or $11,881,813.

On November 6, 1998, Larson and Pfaff, through their trusts, transferred all of PCC's stock to Prevad. On that same day, Prevad transferred its newly-acquired PCC shares to Presidio. Therefore, on November 6, 1998, Prevad did not own one hundred percent of the stock of PCC. On November 8, 1998, PCC transferred the equipment to Prevad, which, on the same day, transferred the equipment to Presidio. In December 1998, Presidio sold the equipment, recording a loss of $11,416,813. Presidio computed its loss by subtracting a claimed basis of $11,881,813 from the sale price of $465,000.

On January 19, 1999, Prevad filed a Form 966 with the IRS. According to this form, Prevad elected to treat PCC as a qualified subchapter S subsidiary (QSub) retroactively, as of October 31, 1998.[2] On its 1998 federal tax return (Form 1065), filed on August 19, 1999, Presidio reported gross income of $4,166,311. In computing this figure, Presidio deducted

---

[1] ($12 million short sale obligation) – ($100,000 in Norwegian currency) – ($200,000 spent to purchase the option) = $11.7 million.

[2] Petitioners assert that this Form 966 misstated the effective date of the election. In this regard, they contend that, due to a clerical error, the effective date shown on the form should have been November 6, 1998.

$10,644,471 as a loss from the sale of certain equipment. Presidio calculated this loss by subtracting from the amount realized from the sale ($465,000), a claimed basis of $11,881,813, thereby producing a loss of $11,416,813. Presidio used $10,644,471 of that amount to offset gross income and reported the remaining $772,342 as a nondeductible expense. On its Schedules K-1, Presidio allocated the entire amount of the loss to Larson, Pfaff and Prevad in the amounts of $1.025 million, $1.025 million, and $9.37 million, respectively.

On or about December 29, 2004, the Internal Revenue Service (IRS) issued Presidio a notice of final partnership administrative adjustment (FPAA) for 1998, which, *inter alia*, increased Presidio's gross income by $10.6 million and reduced its nondeductible expenditures by $772,342. The IRS found that Presidio had failed to establish its basis in the equipment at the time of the alleged sale and that the transaction underlying the claimed loss lacked economic substance and a bona fide business purpose. The FPAA also imposed accuracy-related penalties upon the resulting underpayment of tax

On March 29, 2005, Norvest, the tax matters partner of Presidio, filed this action on behalf of the partnership, challenging the IRS' disallowance of its 1998 loss and the imposition of accuracy-related penalties. On November 17, 2005, the court stayed the proceeding pending a parallel criminal investigation. On March 26, 2009, the stay was lifted and the case was restored to the active docket. Discovery ensued. On September 30, 2010, respondent filed a motion for partial summary judgment. Briefing and argument on that motion is now completed.

## II.   DISCUSSION

We begin with common ground. Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *See* RCFC 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Disputes over facts that are not outcome-determinative will not preclude the entry of summary judgment. *Id.* at 248. However, summary judgment will not be granted if "the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Id.*; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Becho, Inc. v. United States*, 47 Fed. Cl. 595, 599 (2000).

When making a summary judgment determination, the court is not to weigh the evidence, but to "determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249; *see also Agosto v. Immigration & Naturalization Serv.*, 436 U.S. 748, 756 (1978) ("a [trial] court generally cannot grant summary judgment based on its assessment of the credibility of the evidence presented"); *Am. Ins. Co. v. United States*, 62 Fed. Cl. 151, 154 (2004). The court must determine whether the evidence presents a disagreement sufficient to require fact finding, or, conversely, is so one-sided that one party must prevail as a matter of law. *Anderson*, 477 U.S. at 250–52; *see also Ricci v. DeStefano*, 129 S. Ct. 2658, 2677 (2009) ("'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" (quoting *Matsushita*, 475 U.S. at 587)). Where there is a genuine dispute, all facts must be construed, and all inferences drawn from the evidence must be viewed, in the light most favorable to the party opposing the motion. *Matsushita*, 475 U.S. at 587-88 (citing *United*

*States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)); *see also Stovall v. United States*, 94 Fed. Cl. 336, 344 (2010); *L.P. Consulting Grp., Inc. v. United States*, 66 Fed. Cl. 238, 240 (2005).

Subchapter S of the Internal Revenue Code (26 U.S.C. §§ 1361-79) establishes, in considerable detail, the circumstances under which certain "small business corporations" can be treated as flow-through entities for federal tax purposes – "that is, at the individual rather than the enterprise level." *Vanisi v. Comm'r of Internal Revenue*, 599 F.3d 567, 569 (7th Cir. 2010); *see also Information Sys. & Networks Corp. v. United States*, 437 F.3d 1173, 1175 (Fed. Cir. 2006); Boris I. Bittker & James S. Eustice, Federal Income Taxation of Corporations and Shareholders ¶ 6.11, pp. 6–78 to 6–79 (7th ed. 2006).  If the requirements of this subchapter are satisfied, the corporation may elect to have its income and expenses treated as belonging to its shareholders, with the result that the corporation itself is not separately taxed (similar to the treatment afforded partnerships).  *See Patton v. United States*, 726 F.2d 1574, 1575 (Fed. Cir. 1984).  In the parlance of the Code, corporations qualifying for this treatment are called "S corporations."

Prior to 1997, Congress prevented S corporations from being members of affiliated groups.  *See*  26 U.S.C. §1361(b)(2)(A) (1996); *see also* 11 Mertens Law of Fed. Income Tax'n § 41B:2 (2011).  In 1996, however, Congress amended the Code to allow such S corporations to have wholly-owned subsidiaries, known as "qualified subchapter S subsidiaries."  *See* Small Business Job Protection Act of 1996, Pub. L. No. 104-188, sec. 1308, 110 Stat. 1785.[3]  Such "QSubs" are also disregarded for tax purposes – their income passes all the way through to the S Corporation's shareholders without being taxed until it reaches them.  26 U.S.C. § 1361(b)(3)(A) (2007); *Vanisi*, 599 F.3d at 569; James S. Eustice & Joel D. Kuntz, Federal Income Taxation of S Corporations ¶ 3.07[3] (2011); Boris I. Bittker, Meade Emory & William P. Streng, Federal Income Taxation of Corporations and Shareholders: Forms ¶¶ 6.07[2], [7] (2011).  As explained by the accompanying committee reports, under the statute, "if an election is made to treat an existing corporation . . . as a qualified subchapter S subsidiary, the subsidiary will be deemed to have liquidated under sections 332 and 337 immediately before the election is effective."  H.R. Rep. No. 104-586, at 101; S. Rep. No. 104-281, at 33 (1996).

The Code defines a "qualified subchapter S subsidiary, in pertinent part, as "any domestic corporation which is not an ineligible corporation . . ., if –

(i)  100 percent of the stock of such corporation is held by the S corporation, and

(ii)  the S corporation elects to treat such corporation as a qualified subchapter S subsidiary.

---

[3]  Congress based this change on its belief that in "situations where taxpayers may wish to separate trades or business in different corporate entities . . . shareholders should be allowed to arrange these separate corporate entities under parent-subsidiary arrangements as well as brother-sister arrangements."  H.R. Rep. 104-586, at 100 (1996).

26 U.S.C. § 1361(b)(3)(B). To provide "temporary guidance on the manner in which a [QSub] election must be made and the effective date of the election," the IRS issued IRS Notice 97-4, 1997-1 C.B. 351 (Jan. 13, 1997).[4] This notice indicated that the QSub election should be made on an IRS Form 966 and that the election could be made as of the date of that filing or up to seventy-five days prior thereto. The notice, however, indicated that the effective date could not be before the effective date of the 1996 amendments to section 1361 and "that the subsidiary otherwise qualified as a [QSub] must qualify for the entire period for which the retroactive election is in effect." *See* Judith Rood Traum & Sydney S. Traum, The S Corporation Answer Book Q 1:22 (6th ed. 2000). Accordingly, under this temporary guidance, the subsidiary for which the QSub election is made must satisfy all of the relevant statutory requirements – including the stock ownership requirement – for the entire retroactive period, *i.e.*, between the effective date of the election and the date the election is filed.

In this case, petitioners contend that PCC was a QSub of Prevad, entitling Prevad to treat PCC's assets as its own, as of the effective date of the election. They further assert that Prevad assumed PCC's $11,881,813 basis in the latter's equipment before that equipment was contributed to Presidio on November 8, 1998.[5] The latter must be true if Presidio has any hope to deduct the $10,644,471 loss it claims on Presidio's subsequent sale of the equipment. In its motion for partial summary judgment, however, respondent argues that Prevad's election to treat PCC as a QSub was not effective as of November 8, 1998, such that PCC's allegedly stepped-up basis in its equipment did not carry over to Presidio. It would appear that respondent is right.

Here, on January 19, 1999, Prevad, which was Subchapter S corporation, filed a Form 966 to elect retroactively to treat PCC as a QSub. On the form, Prevad indicated that the election was to be effective October 31, 1998, which is exactly seventy-five days before the filing. The form was signed by Larson, as the president of Prevad. However, as of October 31, 1998, Prevad was not the sole shareholder of PCC. Rather, petitioners admit that Prevad did not become the sole shareholder of PCC until November 6, 1998. Petitioners, moreover, further admit that Prevad did not retain its ownership of PCC, but rather, on the same day, transferred its

---

[4] On April 21, 1998, the IRS issued proposed regulations that proposed to modify the election procedure in Notice 97-4. The proposed regulations indicated that until they were finalized, taxpayers should continue to use the election procedure provided in Notice 97-4. The final regulations were promulgated on January 25, 2000. *See* 65 Fed. Reg. 3843-01 (Jan. 25, 2000). Notably, the final regulations retained the requirement that a QSub must qualify for the entire period in which an election is effective, stating that "[t]he corporation for which the QSub election is made must meet all the requirements of section 1361(b)(3)(B) at the time the election is made and for all periods for which the election is to be effective." 26 C.F.R. § 1.1.1361-3.

[5] As noted above, a QSub is deemed to have liquidated under section 332 and 337 immediately before the election is effective. In general, when a parent corporation receives property as a distribution from its subsidiary as part of a such a liquidation, the parent receives a carryover basis in the property, that is, the basis of the property in its hands is the same as the pre-liquidation basis of the property in the hands of the subsidiary. *See* 26 U.S.C. § 334(b).

shares in PCC to Presidio.  Accordingly, PCC was not held by a Subchapter S corporation for the entire retroactive period in question and thus failed to qualify as a QSub.

Petitioners do not dispute that respondent is entitled to partial summary judgment if PCC was not a QSub of Prevad when Prevad contributed the equipment to Presidio.  They argue, however, that evidence in the record contradicts the notion that the November 6, 1998, transfer of PCC stock from Prevad to Presidio actually occurred.  Respondent, however, notes that in response to its first set of requests for admissions, petitioners admitted that "[o]n November 6, 1998, Prevad, Inc. transferred 100% of the stock of Presidio Capital Corporation to the partnership."  Respondent also advises that in further response to its requests for admission, petitioners further admitted that "[a]t no time during the period November 7, 1998, through August 18, 1999, did Prevad, Inc., own 100% of the stock of Presidio Capital Corporation."

RCFC 36(b), like its counterpart Rule 36 of the Federal Rules of Civil Procedure, provides that "[a] matter admitted under this rule is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended."  Regarding the correlative Federal Rule, the Advisory Committee for the Federal Rules of Civil Procedure has explained that an admission made in response to a discovery request has a "conclusively binding effect . . . comparable to an admission in pleadings or stipulation drafted by counsel for use at trial."  Fed. R. Civ. P. 36(b) advisory comm. note (1970 amend.); *see also* 7 Moore's Federal Practice § 36.03[5], at 36-21 ("the party requesting an admission is entitled to rely on the conclusiveness" of it).  This rule is intended to allow a litigant "to request admissions as to a broad range of matters, including ultimate facts, as well as applications of law to fact."  *In re Carney*, 258 F.3d 415, 419 (5th Cir. 2001); *see also West Bay Builders, Inc. v. United States*, 80 Fed. Cl. 700, 703 (2008).  It is well-established that such admissions can form "the factual predicate for summary judgment."  *West Bay Builders*, 80 Fed. Cl. at 703; *see also Quasius v. Schwan Food Co.*, 596 F.3d 947, 950 (8th Cir. 2010); *Armor v. Knowles*, 512 F.3d 147, 154 n.13 (5th Cir. 2007); *Conlon v. United States*, 474 F.3d 616, 621 (9th Cir. 2007); *McCann v. Mangialardi*, 337 F.3d 782, 788 (7th Cir. 2003).

Like its civil rule counterpart, RCFC 36(b) allows a party to move to withdraw an admission, stating that "the court may permit withdrawal or amendment if it would promote the presentation of the merits of the action and if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits."  *See Health Ins. Plan of Greater New York v. United States*, 56 Fed. Cl. 718, 718-29 (2003).  The court gave petitioners the opportunity to file such a motion.  On May 27, 2011, however, they notified the court that they would not file such a motion.  Accordingly, petitioners' admissions stand, thereby preventing them from invoking other evidence in an attempt to create a question of fact as to whether and when Prevad transferred its stock to Presidio.  *See Praetorians Ins. Co. v. Site Inspection, LLC*, 604 F.3d 509, 514 (8th Cir. 2010); *Koszola v. Bd. of Educ. of City of Chicago*, 385 F.3d 1104, 1009 (7th Cir. 2004); *United States v. Kasuboski*, 834 F.2d 1345, 1350 (7th Cir. 1987) ("Affidavits and depositions entered in opposition to summary judgment that attempt to establish issues of fact cannot refute . . . admissions.").  On the basis of those admissions, the court concludes that the QSub election was not effective at the time the equipment in question

was transferred from PCC to Presidio.[6] It follows, *a fortiori*, that petitioners' claimed loss deduction must be denied.

### III.   CONCLUSION

Based on the foregoing, the court **GRANTS** respondent's motion for partial summary judgment. On or before October 20, 2011, the parties shall file a joint status report indicating how this case should proceed, with a proposed schedule, as appropriate.[7]

**IT IS SO ORDERED**.

 s/ Francis M. Allegra
Francis M. Allegra
Judge

---

[6] This same result obtains whether one reads Notice 97-4 as indicating that the QSub election is ineffective if any of the requirements of section 1361(b)(3)(B) are not met during the election period, or as allowing the election but rendering it ineffective as of the date that the requirements of the aforementioned section are no longer satisfied. In either instance, it is determinative here that Prevad did not own PCC on the date that PCC transferred the equipment to Prevad, *i.e.*, November 8, 1998.

[7] Should the parties agree that the next step in this matter is to conduct a trial, they shall jointly propose in their status report a procedure that will allow Mr. Pfaff, who is currently incarcerated, to testify in this matter.